UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**VICTOR D. BATTON**             **CIVIL ACTION NO. 21-3976**

                                                                               **SECTION P**

**VS.**

                                                                    **JUDGE TERRY A. DOUGHTY**

**BAYOU CORRECTIONAL CENTER**      **MAG. JUDGE KAYLA D. MCCLUSKY**

**REPORT AND RECOMMENDATION**

     Plaintiff Victor D. Batton, a prisoner at Bayou Correctional Center ("BCC") proceeding pro se and in forma pauperis, filed this proceeding on approximately November 12, 2021, under 42 U.S.C. § 1983. He names BCC as defendant. For reasons below, the Court should dismiss Plaintiff's claims.

**Background**

     Plaintiff alleges that on June 6, 2021, in Bravo Dorm, he broke his arm in three different places while arm wrestling another prisoner. [doc. #s 1, p. 5; 9, p. 1]. Corporal Drake called Captain Brown to the dormitory. [doc. # 1, p. 5]. Plaintiff alleges that, although Brown reviewed the camera footage and observed Plaintiff's arm "snapping out of place[,]" Brown still placed him in handcuffs, causing him additional pain. [doc. # 9, p. 1]. Sergeant Turner then escorted Plaintiff to Madison Parish Hospital. [doc. # 1, p. 5].

     Plaintiff has a metal plate in the back of his arm that causes him constant pain. [doc. # 9, p. 1]. He also has nerve damage on the right side of his arm. *Id.* Plaintiff claims that he is now disabled because BCC did not provide medical attention with urgency or care. [doc. # 1, p. 5].

     Plaintiff lists various "concerns[,]" which the undersigned presents verbatim for context:

    ° lack of staff involvement in fight prevention

    ° negligence on sense of urgency to medical emergencies; thinking we are always faking

    ° unqualified medical staff/always on call

    ° lack of emergency awareness in cell

    ° unwillingness to handle personal safety (ran like a gladiator comp)

    ° retaliation to submission about other staff;

    ° unwilling to transfer to other dorms/facility

    ° inconsistent physical therapy visits

    ° lack of following my civil rights including Hippa. [sic].

*Id.* He adds that after he submitted a request for care (a "sick call"), he "didn't get the correct medical care as needed[.]" [doc. # 9, p. 2].

    Plaintiff claims that he was "supposed to have a bottom bunk[,]" but he "was forced in a top bunk for . . . 9-12 months." *Id.* at 1.

    Plaintiff claims that he is a convicted inmate and that he was not "supposed to be around" the pre-trial inmate he arm wrestled. [doc. # 9, p. 1].

    On October 26, 2021, while he still had a cast on his arm, Plaintiff "got into a fight[.]" [doc. # 9, p. 2]. He claims that "staff" retaliated against him because they were in the "control key" and "watched the whole thing as [he] fought for [his] life . . . ." *Id.*

    Plaintiff asks the Court to: (1) transfer him to a "proper facility to rehabilitate and tend to [his] medical needs"; (2) award $1,500,000.00; (3) grant him disability benefits; and (4) terminate the employment of the warden and the medical staff. [doc. #s 1, p. 4; 9, p. 1].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[1] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

---

[1] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

*Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra*. A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was

4

committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. BCC**

Plaintiff names BCC as a defendant. Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is "an entity to which the law attributes personality, such as a corporation or partnership." LA. CIV. CODE art. 24. BCC does not qualify as a juridical person. Accordingly, the Court should dismiss Plaintiff's claims against BCC.

Aside from the ostensible claim below against Captain Brown, Plaintiff does not name any other defendant responsible for his varied allegations.

**3. Excessive Force**

As above, Plaintiff alleges that he broke his arm in three places while arm wrestling another prisoner. [doc. #s 1, p. 5; 9, p. 1]. In his initial pleading, Plaintiff alleged only that "they" placed him "in handcuffs which cause[d] [him] additional pain." [doc. # 1, p. 5]. In an amended pleading, Plaintiff alleges that Captain Brown observed video footage of his arm "snapping out of place" and saw Plaintiff holding his right arm yet "still put [him] in handcuffs which caused additional pain."[2] [doc. # 9, p. 1]. Plaintiff was then escorted to a hospital.

---

[2] Plaintiff does not specify which parts of his arm broke. He also does not state whether Brown handcuffed his arms behind him or in front.

Plaintiff does not explicitly name Brown as a defendant, request relief from Brown, or claim that Brown engaged in excessive force. Even assuming Plaintiff did, he does not state a plausible excessive-force claim.

When a prison official is accused of using excessive physical force in contravention of the Eighth Amendment's Cruel and Unusual Punishments Clause, the core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (*citing Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). "Force beyond that reasonably required to maintain or restore discipline is 'wanton and unnecessary.'" *Perez v. Collier*, 2021 WL 4095263, at *2 (5th Cir. Sept. 8, 2021) (*quoting Hudson*, 503 U.S. at 7). "This standard looks to an official's subjective intent to punish." *Id.*

However, not every malevolent touch by a prison guard gives rise to a federal cause of action. *Hudson*, 503 U.S. at 9. The Eighth Amendment does not protect against "*de minimis*" use of physical force, so long as the use of force is not of a sort "repugnant to the conscience of mankind." *Id*. (citation and internal quotation marks omitted). Courts consider the following factors: (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any effort made to temper the severity of a forceful response. *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999).

Here, Plaintiff's allegations do not plausibly suggest that Brown intended to punish him or engaged in conduct that was malicious or sadistic or wanton and unnecessary.

Plaintiff does not clearly allege that Brown used any physical force at all; he alleges only that Brown handcuffed him. Plaintiff does not allege, for instance, that he told Brown not to

handcuff him, complained of pain after Brown handcuffed him, or asked Brown to remove the handcuffs.[3] Thus, the amount of force used was minimal and certainly not "gratuitous."[4]

Further, the handcuffing only caused Plaintiff "additional pain" for an unspecified period of time before he was transported to a hospital. Without more, this amounts to minimal and de minimis injury. "Although [the Fifth Circuit] no longer require[s] significant injury for excessive force claims, the injury must be more than *de minimis*." *Westfall v. Luna*, 903 F.3d 534, 549 (5th Cir. 2018) (quotation marks and source omitted) ("Westfall's . . . abrasions and bruises, bloody urine, and high blood pressure and heart rate, which may have been caused by Trevino's actions, are, based on our case law, *de minimis*."); *see Brooks v. City of W. Point, Miss.*, 639 F. App'x 986, 990 (5th Cir. 2016) (finding that pain in an arrestee's back and neck was de minimis).

While Plaintiff's arm was broken in three places, Brown did not cause these injuries. Brown handcuffed Plaintiff *after* Plaintiff arm wrestled the other prisoner and suffered the breaks. *See Westfall*, 903 F.3d at 549 (noting that one officer did not engage in excessive force

---

[3] *See Widner v. Aguilar*, 398 F. App'x 976, 979 (5th Cir. 2010) ("Widner's excessive-force claim is frivolous because Officer Aguilar did *not* use physical force against Widner. . . . Widner did not allege that Officer Aguilar pushed him or otherwise physically forced him down the stairs, nor did he allege Officer Aguilar used excessive force while handcuffing him."); *McCreary v. Massey*, 366 F. App'x 516, 518 (5th Cir. 2010) (finding neither an unnecessary and wanton infliction of pain nor a malicious intent to cause harm where prison officers handcuffed an inmate behind his back (and the inmate complied) even though the inmate was wearing a sling and asked the officer to handcuff his arms in front); *see also Wells v. State of Okl. ex rel. Dep't of Pub. Safety*, 97 F.3d 1465 (10th Cir. 1996) (finding no excessive force where an officer, using "minimal" force, placed handcuffs on a "cooperative and non-threatening" arrestee who told the officer that his arm "was full of plates and screws" and that he could not put his arm behind his back); *Calvi v. Knox Cty.*, 470 F.3d 422, 425 (1st Cir. 2006).

[4] *See Waddleton v. Rodriguez*, 750 F. App'x 248, 256 (5th Cir. 2018) (finding that the third factor favored the officer because even if the officer squeezed or leaned on the plaintiff's ankles, the force used was not "'gratuitous' relative to the need for force.").

because his actions caused only de minimis injuries and occurred after the arrestee suffered greater-than-de-minimis injuries due to another officer's actions).

Even accepting Plaintiff's allegations as true and construing them liberally and in his favor, Brown's action was not "repugnant to the conscience of mankind." *See generally Murray v. Benson*, 221 F.3d 1343 (8th Cir. 2000) (finding that "the correctional officer's raising Murray's handcuffed arms while escorting him to segregation [was] not the type of force repugnant to the conscience of mankind, given the lack of any resulting injury other than some pain . . . ."); *Lansdell v. Miller*, 817 F. App'x 27, 28 (5th Cir. 2020) ("Lansdell cites no controlling precedent that would put every reasonable officer on notice as to how to arrest someone with a preexisting injury. . . . [A]t the time of Lansdell's arrest, it was not clearly established that Miller could not use two sets of cuffs to handcuff Lansdell behind his back."); *Edwards v. Loggins*, 476 F. App'x 325, 328 (5th Cir. 2012) (concluding, where the plaintiff alleged that officers "handcuffed him behind his back after he was treated for his self-inflicted wrist injuries," that the handcuffing "was not done for the very purpose to cause [the plaintiff] harm.").

Plaintiff describes potential negligent conduct at best. *See Wesson v. Oglesby*, 910 F.2d 278, 283 (5th Cir. 1990) (finding, where the plaintiff alleged that an officer carelessly "handcuffed him so tightly that his wrists were swollen and bleeding[,]" that the officer's conduct did not constitute "an unnecessary and wanton infliction of pain" because carelessness is not "'wanton' conduct."). However, "negligence is insufficient to support a § 1983 claim." *Id.*

Finally, the undersigned observes that the basis for Plaintiff's ostensible claim is the infliction of pain and not any allegation that Brown was deliberately indifferent to his need for medical care. But even assuming Plaintiff did claim that Brown failed to render medical care, he

8

would not state a plausible claim.  He alleges that Brown and another officer facilitated his trip to a hospital; he does not allege that Brown refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).  Rather, like the excessive force claim above, he pleads negligence at best.[5]

## Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Victor D. Batton's claims be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 23rd day of February, 2022.

---

[5] Even Plaintiff maintains that his allegations sound in negligence.  [doc. # 1, pp. 4-5].

_____
Kayla Dye McClusky
United States Magistrate Judge